**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

SANJAY BHANDARI,
VINOD SINGHI, and
RAKESH JAIN,

Defendants.

Civil Action No. 24-cv-_____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges the following against the defendants:

## SUMMARY

1.      This case involves insider trading by Sanjay Bhandari, his close friend Vinod Singhi, and Singhi's close friend Rakesh Jain in the securities of Zogenix, Inc. in advance of the January 19, 2022 public announcement that Belgium-based pharmaceutical company UCB S.A. would acquire Zogenix (the "Announcement").

2.      The day before the Announcement, Bhandari misappropriated material nonpublic information regarding the acquisition from a relative who worked at Zogenix and who had a close personal relationship with Bhandari (the "Zogenix Insider"). In a phone call with the Zogenix Insider, Bhandari learned that the acquisition announcement was imminent. The Zogenix Insider, who maintained a relationship of trust and confidence with Bhandari, provided

this information to Bhandari in seeking career advice about whether to remain at Zogenix or accept an offer to work for another company.

3.    While on the phone with the Zogenix Insider, Bhandari began buying Zogenix stock online.  In all, Bhandari purchased approximately $75,000 of Zogenix stock on January 18, 2022, the day before the Announcement.

4.    Bhandari also tipped this material nonpublic information to his close friend Singhi, who then similarly purchased Zogenix stock ahead of the Announcement.

5.    Singhi, in turn, tipped this material nonpublic information to his close friend Jain, who purchased Zogenix stock and call options ahead of the Announcement.

6.    Zogenix shares increased 66% on the day of the Announcement, from a close of $15.64 per share on January 18th to a close of $25.92 per share on January 19th.  In total, Bhandari, Singhi, and Jain reaped ill-gotten gains of approximately $49,015, $10,555, and $9,570, respectively, on their unlawful Zogenix trades.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), and 78aa].

8.    Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

9.    Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint

2

occurred within this District. Among other things, Bhandari, who resides in this District, misappropriated material non-public information about Zogenix, purchased Zogenix stock on the basis of this material non-public information, and tipped Singhi all while present in the District.

## DEFENDANTS

10. **Sanjay Bhandari**, age 67, resides in McLean, Virginia. During the insider trading alleged herein, Bhandari worked as a consultant for a private company in Virginia, where he provided predictive modeling services for a wealth-rating product.

11. **Vinod Singhi**, age 68, resides in New York and is a close friend of Bhandari.

12. **Rakesh Jain**, age 63, resides in Fremont, California and is a friend of both Singhi and Bhandari. During the insider trading alleged herein, Jain was the Chief Operating Officer of a privately held 3D printing company based in Berkeley, California.

## RELATED ENTITIES

13. **Zogenix Inc.** was a pharmaceutical company headquartered in Emeryville, California. The stock of Zogenix was listed on Nasdaq until March 2022, when UCB S.A. completed its acquisition of Zogenix.

14. **UCB S.A.** is a Belgium-based pharmaceutical company. UCB's stock trades on Euronext Brussels.

## FACTS

**I.    The Zogenix Insider Learned of the Acquisition on January 18, 2022, the day before it was announced.**

15. In late fall and early winter of 2022, the Zogenix Insider was considering leaving Zogenix to work at another company. The Zogenix Insider spoke numerous times with Bhandari, seeking advice about this career decision. Seeking such advice from Bhandari was not uncommon. The Zogenix Insider had for many years sought confidential guidance from

Bhandari regarding significant life decisions, both personal and professional.

16.    By January 18, 2022, having consulted extensively with Bhandari, the Zogenix Insider had accepted an offer of employment at another company, and on that date, he emailed his resignation from Zogenix to his supervisor.  Shortly thereafter on the same day, the Zogenix Insider and his supervisor spoke via a video call in which the supervisor informed the Zogenix Insider that Zogenix was about to be acquired by UCB, and that the acquisition would be announced the very next day, January 19, 2022.  The supervisor asked that the Zogenix Insider reconsider his decision to resign and to remain with the company through completion of the acquisition to assist with the corporate transition, among other things.  The supervisor discussed with the Zogenix Insider the potential financial benefits of staying employed by Zogenix through the completion of the acquisition—including the vesting of the Zogenix Insider's stock options. The Zogenix Insider stood to lose approximately $200,000 in stock options if he left the company before completion of the acquisition.

## II.    Bhandari Misappropriated Material Nonpublic Information From the Zogenix Insider.

17.    The video call between the Zogenix Insider and his supervisor on January 18, 2022, lasted about 20 minutes, ending at approximately 12:07 p.m.[1]  Shortly after that video call, the Zogenix Insider spoke with Bhandari by phone for approximately 54 minutes, from 12:49 p.m. to 1:43 p.m.  During that conversation, the Zogenix Insider explained to Bhandari what he had learned from his supervisor, including the fact that Zogenix was about to be acquired and that the acquisition would be announced imminently.  The Zogenix insider then sought advice from Bhandari about his career transition and whether this new information, including the

---

[1] All times are Eastern Standard Time.

potential financial benefit to him of staying at Zogenix through the completion of the acquisition, should affect either his decision to resign or the timing of his departure from Zogenix.

18.     Throughout their relationship, the Zogenix Insider and Bhandari shared confidences, including many discussions about family, career, and other personal matters.  As part of his relationship with the Zogenix Insider, Bhandari agreed, expressly or by implication, to treat information related to Zogenix and the Zogenix Insider's employment there as confidential and not to trade on it, use it for personal benefit, or share it with others.

19.     Bhandari also knew, was reckless in not knowing, or consciously avoided knowing that, based on their close relationship, along with their history, pattern, and practice of sharing confidences, that the Zogenix Insider expected that Bhandari would maintain the confidentiality of information related to the Zogenix Insider's work, and not trade on it, use it for personal benefit, or share it with others.

**III.     <u>Bhandari Bought Zogenix Stock Ahead of the Announcement.</u>**

20.     Bhandari placed his first orders to purchase Zogenix stock through an online account on January 18, 2022, while he was on the phone providing career advice to the Zogenix Insider.  At approximately 1:38 and 1:41 p.m., Bhandari placed orders to purchase a total of 1,400 shares for $22,450.  Bhandari continued to buy Zogenix shares on January 18, 2022.  In total, Bhandari bought 4,800 shares for $76,870 in accounts in the name of himself and his wife. He placed orders for nearly all of those shares not later than a half hour after concluding his phone call with the Zogenix Insider.  Although Bhandari was an active stock trader, he purchased Zogenix stock on only one day—January 18, 2022—after he learned of the imminent acquisition announcement from the Zogenix Insider.  The dollar value of the Zogenix stock Bhandari purchased on January 18, 2022, was about three times more than the dollar value of

any of any other single-day purchase of any security that Bhandari made in at least two years.

21.     Bhandari knew that the information he had when he purchased Zogenix stock as alleged above was both material and nonpublic.

22.     Bhandari further knew that by purchasing Zogenix stock as alleged above, while in possession of, and on the basis of, material nonpublic information about UCB's acquisition of Zogenix, he breached his duty of trust and confidence to the Zogenix Insider, whom he knew was employed by Zogenix.

**IV.     Bhandari Tipped Singhi, and Singhi Bought Zogenix Stock Ahead of the Announcement.**

23.     After Bhandari concluded the majority of his Zogenix purchases on January 18, 2022, he contacted Singhi by phone and by email.  Bhandari and Singhi regularly shared stock research and recommendations, and often traded in the same securities based on those recommendations.  At approximately 1:57 p.m. on January 18, 2022, Bhandari emailed Singhi to inform him that he had purchased Zogenix stock for $16.05 per share. Conveying such information was consistent with their past practice of sharing information regarding their positions in various securities.  A few minutes later, Bhandari and Singhi spoke by phone for approximately seven minutes.  In that phone call, Bhandari communicated to Singhi that he had learned from the Zogenix Insider that Zogenix was about to be acquired and that a public announcement of the acquisition was imminent.  The call concluded at approximately 2:25 p.m. on January 18, 2022.

24.     Bhandari expected that the information he communicated would be used for trading, and he knew, was reckless in not knowing, or consciously avoided knowing that Singhi would use the tip to trade in Zogenix securities.

25.     Bhandari obtained personal benefits from communicating this information to

Singhi, including the benefit of making a gift of material nonpublic information to a close friend, and the continued reciprocal sharing of information regarding investment strategies that had been ongoing for several years.

26.     At approximately 2:45 p.m. on January 18, 2022, Singhi purchased 500 shares of Zogenix for about $7,970.  He had never purchased Zogenix securities until then.

27.     Singhi knew that the information he had when he purchased Zogenix stock as alleged above was both material and nonpublic.

28.     Singhi further knew or was reckless in not knowing that Bhandari had either misappropriated the material nonpublic information from the Zogenix Insider in breach of a duty of confidentiality, or that the Zogenix Insider had tipped the material nonpublic information to Bhandari in violation of a fiduciary duty to Zogenix.

## V.     Singhi Tipped Jain, and Jain Bought Zogenix Stock Ahead of the Announcement.

29.     Less than 10 minutes after buying his first 500 shares of Zogenix on January 18, 2022, Singhi exchanged text messages with Jain, who purchased 500 shares for $8,000 within two minutes of those text messages.  Later that day, Jain bought out-of-money call options in Zogenix that expired only three days later.  The call options were a bet that the price of Zogenix stock was going to increase.

30.     Before Jain purchased Zogenix securities, Singhi provided Jain information regarding Zogenix that Jain knew or was reckless in not knowing, or consciously avoided knowing was both material and nonpublic and was obtained from a Zogenix employee, either in breach of a duty of confidentiality owed to the employee, or in breach of a fiduciary duty the employee owed to Zogenix.

## VI.    The Announcement and Defendants' Ill-Gotten Gains.

31.    On January 19, 2022, at approximately 1:00 a.m., UCB issued a press release announcing the acquisition of Zogenix for $26 per share, plus a potential cash payout of $2 per share if certain conditions were met.

32.    At 7:31 a.m. on January 19, 2022, Bhandari texted Singhi and Jain a link to the press release.  At 8:48 a.m., Bhandari texted the group:  "Are you up Rakesh?"  Jain responded affirmatively, and about a minute later, he and Bhandari spoke by phone about, among other things, whether they should continue to hold the stock or sell their positions.

33.    Bhandari, Singhi, and Jain each sold all of their Zogenix stock before noon on January 19, 2022, confirming to each other by text messages that they had done so.

34.    In total, Bhandari made approximately $49,015 in profits on his Zogenix trades; Singhi made $10,555; and Jain made $9,570.

### CLAIM FOR RELIEF
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5)

35.    Paragraphs 1 through 34 above are re-alleged and incorporated by reference as if fully set forth herein.

36.    Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

37. By reason of the conduct described above, Defendants violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Enter a permanent injunction restraining the Defendants, their agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

B. Order Defendants to disgorge, with prejudgment interest, all ill-gotten gains obtained by reason of the unlawful conduct alleged in this Complaint pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

C. Order Defendants to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

D. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

E. Grant such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

The Commission demands a jury in this matter for all claims so triable.


DATED this 30th day of April, 2024.


Respectfully submitted,


*/s/ Timothy K. Halloran*
Timothy K. Halloran (VSB No. 48352)
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-5985
Tel:  (202) 551-4414
Email:  HalloranT@sec.gov


David J. D'Addio
Jonathan Allen
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
Tel:  (617) 573-8900
Email:  Daddiod@sec.gov